Good morning and welcome to the Fourth Circuit. We're ready to hear argument in our first case, Rios v. Warden. Good morning, Your Honors. May it please the Court. My name is Stephen Wirth. I represent Petitioner Appellant Santiago Rios. The jury convicted Mr. Rios, having never been told that the state bore the reasonable doubt, and that's despite the fact that both trial counsel and the state presented ample evidence and argument on the issue of self-defense. South Carolina Post-Conviction Court held, as a matter of state law, that trial counsel's decision to abandon that instruction was clear deficient performance. Not only was Mr. Rios entitled to the instruction under state law, which is a holding that this Court owes a special deference to, but trial counsel also had no tactical reason for abandoning his request for a self-defense instruction. And we know that based on two things, both counsel's statements to the judge during the jury charge colloquy and based on counsel's testimony. You mentioned deference, but don't we owe double deference here to the Post-Conviction Court's determinations? Well, the double deference standard applies where the state court has found, as a matter of state law, that trial counsel's performance was not deficient. Here, we have a state court determination, as a matter of state law, that the trial counsel was deficient, that Mr. Rios was entitled to an instruction, and he failed to get it. But we don't owe any AEDPA deference to that determination, right? Well, this Court actually, in Williams, answered that question in the affirmative. It applied the AEDPA standard, the unreasonable interpretation of federal law standard, to the first prong of a Strickland analysis. But not to the first prong when it comes out for the petitioner. AEDPA applies that unreasonableness standard when a petitioner is defending it. Actually, in Williams v. Osment, and that's 494 F. 3rd, 478 F. 484, this Court specifically applied deference to the state court's finding of deficient performance. So it applied it to that first prong. How can that be when the statute says relief cannot be granted unless the state court was unreasonable or issued an unreasonable ruling? I don't understand how you're reading the statute. There's two reasons why it might apply in that scenario. First is because it serves the important federalism issues, federalism concerns that AEDPA is meant to further. But second, in this case, the first prong analysis was tied up in an issue of state law, and so this Court owes a special deference. That's not AEDPA deference. I understand what you're saying about state courts construing state law, but I just don't understand how a statute that says a federal habeas court cannot grant relief unless a state court has issued an unreasonable ruling, how that would apply in circumstances like this. Yes, I understand your concerns, Judge Harris, but that's what this Court has done. However, if the Court were to decide that that is the incorrect analysis, then this Court would review that issue de novo, applying due deference to the case, and put the thumb on the scale against the petitioner in this case, where the state court actually found in the petitioner's favor. And despite correctly finding deficient performance here, correctly finding clear deficient performance in this case, the post-conviction court then unreasonably applied Strickland, unreasonably under 2254d1, to hold that Mr. Rios was not showing deficient performance. Now, that determination is unreasonable for two reasons. First, the post-conviction court ignored the obviously prejudicial effect of relieving the state of its burden of proof, its burden to disprove self-defense beyond a reasonable doubt. This court recognized in Guthrie that when a state law places the burden of proof on the state, as does South Carolina, that it denies a defendant due process if the court fails to instruct on the state's burden. And faced with the same question... Your client never admitted to shooting his wife, did he? No, he never admitted to firing the gun. So how can he argue self-defense? Well, that's a question of South Carolina law. And as a matter of South Carolina law, the South Carolina courts are clear in cases of battle and light that even when a defendant does not admit to firing the gun, even when the shooter is unknown, even when it is contested who fired the weapon, or even whether the shot was fired intentionally, that a defendant can still claim self-defense and that a defendant is entitled to a self-defense instruction as a matter of state law. And that's what the post-conviction court found here, that he was entitled to that instruction as a matter of state law. Counsel, on the prejudice point, so the district court and the magistrate applied that Davis standard. They applied a different standard than the usual regular Strickland standard. Are you arguing that that's... Is that part of your argument? That's not part of my argument here. So you're conceding either... What is it that you are conceding, that Davis does not apply here, that Davis is the wrong rule, or that because we're under EDPA, we can't really resolve an open question in this posture? Well, there's no need to resolve that question here because my client is and this court held in luck that the question is whether, if the instruction had been given, whether the outcome of the trial, reasonably probably the outcome of the trial could have been different. And that standard should apply here. And this court obviously is not bound by the Davis decision. But faced with the same question, as we are here, on plain error review, the Third Circuit held in Smith, that a failure to instruct on the state's burden to prove self-defense beyond a reasonable doubt, which is what the state had to do here, has an unfair prejudicial impact. But, Counselor, Strickland is really clear. Strickland says there's a couple of things that we will consider per se prejudicial, like if the lawyer doesn't show up or if the lawyer has a conflict of interest. Other than that, we don't do per se prejudice. It doesn't matter if it's a constitutional violation. You still have to show on the facts how this case would have come out differently. So I don't understand. Explain to me why it matters if this was a due process violation where, in a different posture, if you were not doing ineffective assistance of counsel, it might be presumptively prejudicial or you might assume a certain level of prejudice. I'm not arguing that there's any sort of per se prejudice here, Judge Harris. Instead, what I'm arguing is that the prejudicial effect of removing the state's burden is obvious here because the courts have held in other circumstances, they've held just how prejudicial it can be by applying the plain error review standard. Here, we do have to look to the totality of the evidence. We have to look to the totality of the circumstances. It is not enough to merely show a due process violation to prevail under Strickland. However, here, on the facts of this case, there is ample evidence to support both the jury instruction and the notion that, and the fact that had the jury known and applied the law, had they known and applied the law to the facts as they were presented, that the outcome could have been different, that at least one juror could have changed his or her mind and voted to acquit. Was he entitled to both an accidental instruction as well as self-defense? Yes, Judge Moon. He was entitled to both. And under South Carolina law, he could have, those two instructions are not mutually exclusive. So he was entitled to both. And under the evidence here, the question was whether he intentionally fired the weapon. If they believed, if the jury believed that he did under the instructions that the court gave, they had to vote to convict. They couldn't find, based on his intentional act, that he had acted lawfully. And that's why this instruction is so important on these facts. Because really, that's the only issue here. When they go into the bedroom, what happened? And we know his story. And the jury could have believed it or not. But if they believed that he intentionally pulled the trigger, then they had nothing to do with his, they had nothing to do with the statements that he acted in self-defense. They had nothing to do with his reasonable fear when he said, I feared for my life and I feared for my family. They didn't know what to do with that evidence. And so that's why it's so prejudicial in this case. And it's so prejudicial, and we know that it's so prejudicial, because both trial counsel and the state argued self-defense in their closing arguments. And so for the judge to exclude that argument and then for, or to not charge on that, then for the trial counsel and the state to argue it to the jury, and then for the judge not to come back and give an instruction, it makes no sense. And the jury has left this misleading impression about how to interpret the facts. If I'm remembering right, the PCR court says it's not, applies the standard Strickland inquiry into prejudice and says, it's not prejudicial because this guy's credibility problems were so strong, having made up an entire story about the intruders, that I just, the PCR court just didn't think there was a reasonable probability that any juror was going to vote to acquit, even had they've been given someplace to put this late-breaking self-defense story. What's, how is that unreasonable? Judge Harris, it was... You disagree, but what makes that an unreasonable... It was unreasonable not to put that question to the jury. It was unreasonable for the jury not to be able to, to weigh that evidence in light of the law. That's your argument that this was an error. I totally understand your argument that it was an error, but we're at a sort of a slightly different question now. We have a PCR court saying there was an error, but it wasn't prejudicial, and the reason it wasn't prejudicial is because no reasonable chance that this newly developed self-defense theory, after the original story that three intruders broke into the house and killed the woman, that the jury was going to buy it. It really doesn't matter. Maybe there was an instruction, maybe there wasn't, but no reasonable juror, there's no reasonable likelihood that a juror would have a crazy theory that he came up with at the last minute after he'd already given an entirely inconsistent story, and after he had given a later story in which he's the first person who makes the argument physical and pushes the white. With all of that on the table, there's no reasonable probability of a different outcome. Now, we have to find that that is not only incorrect, but an unreasonable determination by the PCR court. So what makes it unreasonable? That's what I'm supposed to say to answer that question. It's unreasonable for a few reasons. The first and most important reason is that there was conflicting evidence on all of these points that the jury could have weighed and weighed in light of the state's high burden here. We have to remember that everything comes back to the state's incredibly high burden to disprove self-defense beyond a reasonable doubt. The jury only needed a reason to believe self-defense. That's all. And if they had any reason, then they could have found that. And we know, looking at his statements and viewing them in the light of both his mother's statements and in light of the physical evidence, that there is credibility there. His statements line up with the physical evidence. They line up with the physical evidence of his hair found pulled out in the living room. They line up with the physical evidence of the gunshot wound. They line up with the evidence of his ripped t-shirt. Can I just ask you one quick question about his statement? So he does, at some point, originally say, I pushed her first. No. No, Judge Harris. He doesn't say I pushed her first. The statement is, I shoved her and she shoved me. It is not a statement of chronology. The only person who states expressly who the aggressor was, was Mr. Rios' mother. And Mr. Rios' mother said, unequivocally, that she pushed him. So at trial, was that the argument that was made? I'm just trying to figure out what happened to his original statement. So is that how that was dealt with at trial? Defense counsel said you can't tell the sequence from that statement? Or did he walk back the statement? I'm just, what did the jury know about that original statement? Well, the jury read the original statement and read it in context and was able to see from the language that he used and also from the fact that the rest of the statement was not entirely chronological, that he might not have meant, I pushed her and then she pushed me. And that's sort of normal language. You could ask me what happened and I could say, I yelled at her, she yelled at me. And you wouldn't know necessarily that I started the fight. There's no indication that I started the fight from that statement. And it is also, the jury was also able to view this statement in light of the fact that it was translated directly into English, then translated back to Spanish, and then signed in English, two languages that weren't his first languages. So they could have viewed that and realized that there was, that this was not a specific question about sequencing. I see that my time has expired and I'd like to save time for rebuttal. Thank you. Ms. Scranton? May it please the court. I'm Caroline Scranton of the South Carolina Attorney General's Office and I'm here today on behalf of Respondent Warden and ask that you affirm the district court order granting summary judgment and denying federal habeas relief in this case. In this 2254 action, this court looks de novo to the last reasoned state court decision to determine whether it was contrary to or whether it was an unreasonable application of clearly established federal law as developed in this case in Strickland v. Washington. And so we look to that final PCR court order, which though finding deficient performance, determined that there was no prejudice caused by trial counsel's failure to make the final objection and simply preserve for appellate review his request for the self-defense instruction. And we submit that that was not an unreasonable determination by the federal court in this case. We turn to the prejudice analysis because we know that under Strickland v. Washington, even if there is an error, prejudice is really what can win, make or break the day. And so in the prejudice analysis in this case, with the failure to preserve the request for the self-defense instruction, we look to whether, had trial counsel asked one more time for that self-defense instruction, whether the trial court should have given that instruction. And then we also look to the reasonable probability, of course, of a different outcome at trial, assuming that that instruction had been given. Well, did both sides argue self-defense to the jury? I do not believe so. Or lack? Okay, because your opponent says that they did and it seems like if that was the central point that instruction should have been given. Yes, Your Honor. And if you actually turn to page 462 of the appendix, you'll see at the top of that page, trial counsel Brannon's closing argument on behalf of Mr. Rios, and it says, what happened in that bedroom was an accident. And so jumping into Judge Harris's final question from earlier, how was the defendant's statement used at trial? Well, defense counsel very clearly in his closing argument looked at that statement and he directed the jury's attention to what happened in the bedroom. And that was his focus in support of the affirmative defense of accident and support of his client's defense. However, the statement itself, we have a statement from the defendant, his final statement, where he says, I pushed her, she shoved, it's an incomplete sentence, she pulled my hair, she pulled, she yanked my medallion. And then that paragraph concludes with him saying that he followed her into the bedroom. So based on this alone and going back to whether or not the charge should have been given, of course, and going back to that prejudice analysis, is there a reasonable probability of a different outcome at trial? The answer is no, because of how the evidence was relayed at trial and because of how defense counsel worked with that evidence at trial. We don't have legally sufficient evidence in this case of self-defense. We know that we have four elements for self-defense. We know that the first element is that you cannot be at fault in bringing about the difficulty. And that is not what the evidence suggests in this case. Because the altercation began in the kitchen, because there was no withdrawal, the altercation, yes, at some point moved to the bedroom. And yes, the evidence is that he followed her into the bedroom. And we know from Isabel Rios's... Wait, you've pointed me to JA 462 where trial counsel talked about accident. But there were also points in the closing argument where trial counsel, you left out the part where they did talk about self-defense and the state also rebutted self-defense in their argument. So what about the fact that both parties, they did argue self-defense, didn't they, both parties? Yes, Your Honor, they do make mention of the self-defense in their arguments. And they make that final portion of the defendant's statement where he does use the phrase self-defense. Right. So my question then was, since we've established that they, both parties, did in fact argue self-defense, what was the jury to do then when they had no self-defense instruction, if they agreed or found themselves agreeing with the petitioner's argument? So the jury had two other options. They, of course, chose malice, murder. They made that finding. But they had voluntary manslaughter, which involves the heat of passion, and they were instructed on the heat of passion. So the jury in this case, if they did buy the self-defense evidence, which again we submit was not legally sufficient for the charge, but if they bought into that part of his statement and that version of Mr. Rios's story, they could choose voluntary manslaughter. They could determine that there was evidence of a struggle and that this killing occurred in the heat of passion. Or they could choose the affirmative defensive accident. And again, Mr. Rios's statement talks about how his hand was on the barrel of the gun. He never admits to being the shooter. He never admits, and the evidence does not support that his hand ever necessarily moved from the barrel to the trigger, which kind of raises the question of, okay, well does that mean that he did not ever physically act in self-defense if he's never admitting to being the shooter? And so the jury had those two other options. They did not have to select the malice murder. There was an affirmative defense available that did match the facts that were presented at trial, and there was, of course, the lesser included. Again, if they bought into or selected the heat of passion, the evidence of the struggle, and the case theory of the struggle, which was presented by the defense throughout the trial. And so that is really the evidence in support of the reasonableness, again, of that decision by the district court to uphold the PCR court's finding that there was no prejudice. Not to uphold it, but to defer to that, of course, under AEDPA. There was an additional bar to the legal sufficiency of the self-defense instruction, which was requested in this case, and that is that there was evidence of mutual combat. If you look to Isabel Rios' testimony, and if you look to her whole testimony in the context of the trial, and Mr. Rios' child sibling's testimony, it's very clear from the context of the record that Isabel was not present when the altercation began in the kitchen. And it's also very clear from Isabel and from Santiago's testimonies, or statement rather, that the two were engaged in mutual combat, that there was a willingness to fight. Again, he says, I pushed her, she shoved, she yanked my hair. So again, under South Carolina law, when you have that evidence of that mutual combat, that acts again as a bar to the self-defense instruction. So there were two bars. But aren't we stuck with the ruling that he was entitled to the instruction? Your Honor, the ruling that he was entitled to the instruction is deferred to under the AEDPA standard. However, I believe that reasonable minds could differ as to whether or not he was entitled to the instruction, and as to whether that was actually the holding by the PCR court. The PCR court, in its final order, found that there was clear deficient performance stemming from trial counsel's abandonment of the preservation. And that is a reasonable finding when you look in isolation. I like to look at the prejudice and the deficient performance prongs of Strickland kind of as two chapters in the book. And so if you turn just to the deficient performance finding that the PCR court made, you turn to trial strategy, and you also turn to what I was finding. And that is that the South Carolina Court of Appeals did find that that request was waived and abandoned. And so when you're on 2254, when you're when you're in a habeas action, that state appellate court determination becomes a factual determination that is owed deference by the federal court on habeas. And so I think that that's a reasonable outcome for the PCR court based on that Court of Appeals ruling. I think that serves as the basis for where the PCR court may or may not have been struggling with was this deficient and was this prejudicial. But at all times, and what is important here, is that the PCR court always goes back to the outcome of the trial, because that's what we have. We have an ineffective assistance of trial counsel claim, and the PCR court is always coming back to what the outcome of the trial was, and whether or not there's a reasonable probability of a different outcome. So we may disagree with whether it was deficient or not. But again, under Harrington v. Richter, as long as fair minors jurists could disagree as to whether the state court came to the proper outcome, that is not, clearly not, a basis for granting federal habeas relief. So if there is a disagreement, it doesn't mean that it's unreasonable. And here, based on the totality of the record, we think that the deficient performance finding in this case was reasonable. And addressing the questions about the Davis case from earlier, I don't think that Davis applies in this case. That's an 11th Circuit case, which three years later, the 11th Circuit came back and did note that Davis was perhaps pushing things, because Davis appears to look at the outcome of the appeal, had the issue been preserved. And that was a that was a Batson issue that was not on trial counsel's performance. And the 6th Circuit has rejected that view, and the 8th Circuit has also rejected that view. And so I don't think that the standard from Davis that was enunciated in the report and recommendation in this case is determinative of trial counsel's performance. I think, again, going back to Strickland v. Washington, you have to focus on what happened at trial and what counsel, it's enough for you, right? I mean, you just have to show that the the legal standard applied by the PCR court, the non Davis standard was not contrary to clearly established law. Yeah, but you don't need us to reach the merits. You just need us to say, you know, seems like it's kind of an open question. And so it's obviously not contrary to clearly established law. Yes, Your Honor. And so, again, based on the record in this case, really the first piece of evidence that was presented at trial was the 9-1-1 call. And you could hear a petitioner in the background of the 9-1-1 call saying, no digus nada, don't say anything. And so petitioner's statements from the very beginning of trial set up kind of this lack of credibility that supports that there's no reasonable probability of a different outcome on the prejudice prong of Strickland by the failure to instruct or the failure to achieve the self-defense instruction in this case. And if you go back to that phrase, no digus nada, it's also reflective of the record, right? There's no legally sufficient evidence. The record doesn't say anything that would be legally sufficient to warrant that charge. And therefore, under Strickland versus Washington, we do think the state PCR court applied the proper standard and it should be affirmed. If there are no further questions, I thank you. Thank you. Mr. Worth? A few closing points. Judge Thacker, you asked, did both sides argue self-defense? And I want to clarify, they absolutely did. Defense counsel argued at record 640 to 641 and 643. The state argued again at 654 to 657 and 663. The state, one of the last statements from the state in this closing argument was, this was not self-defense. It is unambiguous that was an issue in this trial. It was an issue that mattered to the jury. Judge Thacker, you also asked, what were they to do if they believed self-defense? And the answer to that is clear. If they believed the gun, they were to convict. They had no other option. If they believed that he intentionally fired the gun in self-defense, they were to convict. The state suggests that they could instead convict on a lesser-included offense. That's not correct. The lesser-included offense here was voluntary manslaughter, which is heat of passion. And no counsel argued heat of passion. State's counsel said, I'm sorry, Judge Moon, you said, aren't we stuck with the PCR Court's finding of deficient performance? That is absolutely correct. After Mr. Rios moved to alter amend, the PCR Court said explicitly in both its Form 4 order and in its final judgment that there was clear deficient performance here. It's not, as the state has suggested, a close question or one that the PCR Court seemed to struggle with. The state court found clear deficient performance. Both counsel argued self-defense and accident. And those are alternative arguments. And so the state's wrong to suggest that counsel had to stick with one or the other. Finally, mutual combat is foreclosed by the state PCR Court's finding of deficient performance here. That issue is not before this court. The state court did not find that there was any evidence of mutual combat here. And the state trial court also did not charge mutual combat here. So that's not an issue. So what we're left with is this. The jury was instructed incorrectly. And based on the instructions that they were given, they only had one thing to do if they believed that Mr. Rios intentionally fired the weapon. They were instructed to convict. Now, there's a reasonable probability that if the jury knew the law and followed the law and applied that law to the facts here, the facts that were before them, that the outcome would have been different. And to find otherwise was an unreasonable application of federal law of Strickland against Washington. And so I asked this court to reverse the district court's judgment and to order the writ to be granted. Thank you very much. Thank you. And thank you, Mr. Worth. We recognize that you are court appointed. And thank you very much for your excellent representation of Mr. Rios. Thank you, Judge Becker. All right. We'll come down in Greek council and go directly to our next case.
judges: Stephanie D. Thacker, Pamela A. Harris, Norman K. Moon